**OAK SHORES PROPERTY OWNERS'
ASSOCIATION, INC., et al.,
Defendants–Appellants,**

v.

**NOBLE COUNTY BOARD OF COM-
MISSIONERS, Plaintiff–Appellee.**

No. 57A03–8911–CV–475.

Court of Appeals of Indiana,
Third District.

Dec. 20, 1990.

Tim J. Cain, LaGrange, for Oak Shores
Property Owners' Assn, Inc.

James E. Springer, Fort Wayne, for
Charles C. Fraze.

Christopher C. Myers, Myers & Geisleman, Fort Wayne, for Noble County Bd. of Com'rs.

GARRARD, Judge.

Oak Shores Property Owners' Association, Inc. et al. (Oak Shores) appeal an order of the Noble Circuit Court denying their motions for summary judgment and granting summary judgment in favor of the Noble County Board of Commissioners (commissioners).

The facts before the court disclosed that on March 11, 1975 the commissioners approved the final plat of Oak Shores Subdivision. The plat dedicated for public use 3.6 miles of road and seven cul-de-sacs, none of which had been constructed prior to approval of the plat. Noble Limited, the developer, engaged Yost Companies, Inc. to construct the roads and cul-de-sacs. On March 12, 1976 Yost delivered to the commissioners a performance bond in the amount of $100,000 with State Automobile Mutual Insurance Company as surety.

Yost failed to construct the roads and in 1979 the commissioners filed suit against the surety on the bond. For reasons that are unclear in the record, in 1983 the commissioners agreed to a settlement with the surety under which the county dismissed its suit with prejudice in exchange for $40,-000. That sum was insufficient to complete the roads according to specifications.

Ultimately, the commissioners sought to pay the $40,000 plus interest toward construction of the roads and to be relieved of any further responsibility for construction; Oak Shores sought to mandate construction of the roads and cul-de-sacs by the county. The trial court denied Oak Shores' motions for summary judgment and granted summary judgment in favor of the commissioners.

The question we must decide is whether by approving the subdivision plat, fixing and accepting the performance bond, settling the claim on the bond, or some combination thereof the county became obligated to complete the roads and cul-de-sacs at county expense to the extent such costs exceed the $40,000 settlement and the interest accrued thereon.

Counties are granted authority by statute to build and maintain roads in the county. IC 8–17–1–1. While a duty is placed on the county to maintain and repair county highways, *Davis v. Bd. of Commrs.* (1971), 149 Ind.App. 451, 273 N.E.2d 551, that duty does not arise until the county has accepted the highway in question. 2 Thompson on Real Property (1980 Replacement) § 372, p. 467; *accord* IC 8–17–1–16. That is to say, the county has the power to open new roads but it is not obliged to do so. Thus, the legislature has also established procedures whereby residents may petition the county commissioners to lay out and improve roads. *See* IC 8–17–1–4 *et seq.* The statutory scheme contemplates notice, hearing, opportunity to remonstrate and provisions for funding.

Rather than employ these procedures, Oak Shores relies upon the provisions of the Noble County Subdivision Control Ordinance to assert the creation of a duty on the county. That ordinance tracked the provisions of IC 18–7–4–59 (repealed),[1] and was apparently enacted pursuant to that statute's authority.

The statute provided:

The commission may approve a plat for a subdivision in which the improvements and installations have not been completed as required by the subdivision control ordinance, if the applicant provides a bond which:

(1) Runs to the county.

(2) Is an amount determined by the commission to be sufficient to complete the improvements and installations in compliance with the ordinance.

(3) Provides surety satisfactory to the commission.

(4) Specifies the time, based on the date of transfer of any of the lots of the subdivision or occupancy of dwellings in the subdivision, for the completion of the improvements and installations.

1. The present version appears as IC 36–7–4–709.

Any funds received from these bonds shall be used by the county only for the purpose of making the improvements and installations for which the bond was provided. The proceeds of the bond may be used for these purposes without appropriation. If the improvement or installation is to be made within a city, the county shall transmit the proceedings of the bond to the city which shall complete the improvement or installations.

(IC 17–3–43–2 (repealed) [2] provided that the county commissioners was the body to approve proposed subdivisions in counties that had no area or county plan commission.)

Initially, we note that the ordinance does not appear to have attempted to broaden or enlarge upon the purposes of the act of the legislature and the parties have not contended for any broader reading. Thus, the question is whether the statute, itself, having been implemented by ordinance, imposes the duty contended for by Oak Shores.

The title of the act [3] authorized the establishment of area planning departments and, through their administration, the development through planning and zoning of urban and rural areas. The legislative purpose set forth in the first section (IC 18–7–4–1) addressed planning for future development and included specifically both concern for adequate streets and for the efficient and economic use of public funds. Chapter VI of the statute, which addresses subdivision control ordinances, speaks to four concerns: (1) the minimum size of lots, (2) the dimensions of streets and their coordination with other existing or planned streets and roads, (3) the dimensions of water, sewer and other municipal services, and (4) the allocation of areas for public and private uses.

Rather clearly then the purposes of the act address planning activities and controls instead of governmental construction or operation. Indeed, it may be deduced that one of the legislative concerns was to protect local taxpayers from undue expenditure of public funds.

■ Oak Shores focuses on that portion of the ordinance and statute which provides:

Any funds received from these bonds shall be used by the county only for the purpose of making the improvements and installations for which the bond was provided.... If the improvement or installation is to be made within a city, the county shall transmit the proceedings [sic] of the bond to the city which shall complete the improvements or installations.

They argue that the use of the phrase "shall complete" in reference to improvements in cities necessarily implies that where bond has been fixed or collected upon by the county, the county is bound to complete the improvements which do not lie within a city.

■ We disagree for two reasons. First, the statutory scheme contemplated that subdivision control, including the decisions to approve a plat with uncompleted streets, to fix the amount of bond, and approve sureties was to be exercised by a specially created area planning department or commission. In the present case the county commissioners only happened to perform that function because no area plan commission had been created. Thus, Oak Shores' argument would necessarily accord to area plan commissions the power and authority to require their county commissioners to build or complete specific public roads. We find no legislative purpose to afford area plan commissions such power, and its implication is contrary to the power granted to the counties themselves. IC 8–17–1–1.

Secondly, if the statute were intended to impose upon the county the obligation to complete roads and streets in proposed subdivisions once the plat had been approved, or a bond fixed, or collected upon then the language relied upon by Oak Shores would be essentially mere surplusage. That is because provision for use of the particular bond proceeds, or their expenditure without

2. The present version appears as IC 36–7–3–2.

3. Acts 1957, Ch. 138, § 58, p. 261.

specific appropriation, would be meaningless if the county was obligated to build the roads from its general fund.

We believe a more reasonable interpretation of the statute and the one intended by the legislature was to permit area plan commissions to allow developers to secure approval of plats before all improvements and installations were completed when a proposed subdivision met the other requirements of the commission. Such approval would often be necessary so that the sale of some lots could be had to assist in financing the costs of the improvements and installations. As a measure of security for both the general taxpayers and purchasers within such a subdivision the act permitted the commission to fix and secure a performance bond to cover the anticipated cost of the improvements. That would presumably serve as a source of funds for completion in the event the developer or contractor defaulted. Quite naturally the legislature limited the use of performance bond proceeds to the purpose for which the bond was posted, and therefore permitted counties to so use proceeds without the necessity of passing an appropriation. While in such default situations the surety on the bond often provides the necessary work completion, counties were authorized to perform or procure completion through use of the bond proceeds. That would provide a measure of protection to both purchasers of lots in the subdivision in securing their streets or other improvements and to county residents at large by protecting the general fund of the county and their tax dollars. The provision concerning cities was merely to denote that where the improvement lay within city limits the bond money was to be paid over to the city and it could take charge of the project. (Recall that the statute requires all bonds be payable to the county.)

Certainly, where the funds were adequate to the designated purpose there is no reason to suppose that the county, or city as the case might be, would not proceed to secure completion. The statute is, however, wholly silent on what should occur where, for one reason or another, the fund is inadequate for the project purpose.

That being so, the general statutes control and it is within the power and authority of the county to elect to proceed or not, except that project bond proceeds may not be used for some other purpose.

 One further point remains. It is argued, at least inferentially, that the county might be liable to complete the roads because it settled the claim against the bonding company for $40,000. To the extent that this position might be taken to state a claim, it sounds in tort and is within the purview of the Tort Claims Act, IC 34-4-16.5-1 *et seq*. The trial court found as an undisputed fact that no notice had been given as required by the act. *See* IC 34-4-16.5-7. It follows that any such claim is barred.

Affirmed.

HOFFMAN, P.J., and STATON, J., concur.